**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| NEXT/INGLE HOLDINGS, LLC, a Delaware limited liability company, and NEXT NRG OPS, LLC, f/k/a NEXTNRG, LLC, a Delaware limited liability company, | Civil Case No. 1:25-cv-09836-GBD |
| Plaintiffs, |  |
| v. |  |
| GSPP HOLDCO III, LLC, a New York limited liability company, and GREEN STREET POWER PARTNERS, LLC, a New York limited liability company, |  |
| Defendants. |  |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**HAYNES AND BOONE, LLP**
*Co-Counsel for Plaintiffs*
Justin R. Bonanno (JB-3034)
Brian P. Matthews (BM-0244)
30 Rockefeller Plaza
22nd Floor
New York, New York 10112
Tel: (212) 659-7300
Fax: (212) 918.8989
Email: Justin.Bonanno@haynesboone.com
        Brian.Matthews@haynesboone.com

**THE BERNSTEIN LAW FIRM**
*Co-Counsel for Plaintiffs*
Michael I. Bernstein
Matthew Savino (*Pro Hac Vice* forthcoming)
10800 Biscayne Boulevard, Suite 950
Miami, Florida 33161
Tel: (305) 672-9544
Fax: (305) 672-4572
Email: Michael@blfmiami.com
        Matthew@blfmiami.com

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................. 1

SUMMARY OF THE FACTS ................................................................................................... 3

    A.    The LOI Protects Plaintiffs from Defendant's Misrepresentations ........................ 3

    B.    Two Weeks Before the MIPA is Executed, Defendants Misrepresent the Status of the JEA Negotiations, in Violation of the LOI ....................................................... 4

    C.    Based on Defendants' Misrepresentations, Plaintiffs Enter into the MIPA ........... 4

ARGUMENT .......................................................................................................................... 5

    I.    LEGAL STANDARD ................................................................................................ 5

    II.    GSPP IS A PROPER PARTY ................................................................................... 6

    III.    DEFENDANTS CANNOT AVOID LIABILITY FOR THEIR MATERIAL FRAUDULENT MISREPRESENTATIONS ............................................................. 7

        A.    Defendants' Attempt to Craft a Retroactive Release of their Fraudulent Representations Should be Rejected by the Court ........................................... 7

        B.    The Fraudulent Inducement and Negligent Misrepresentation Causes of Action are not Duplicative of Plaintiffs' Breach of Contract Claims ............. 11

    IV.    DEFENDANTS BREACHED THE LOI BY FAILING TO PROVIDE PLAINTIFFS WITH INFORMATION RELATING TO THE PPA NEGOTIATIONS ...................................................................................................... 12

        A.    Plaintiffs' Claim for Breach of the LOI is not Barred by the Integration Clause in the MIPA ...................................................................................... 12

        B.    The LOI Expressly Excludes the "Exclusivity" and "Confidentiality" Provisions from the "Errors and Omissions" Provision ................................ 15

    V.    THE COMPLAINT SETS FORTH A CAUSE OF ACTION FOR BREACH OF THE MIPA ............................................................................................................... 15

        A.    The LOI is a Transaction Document under the MIPA ................................... 16

        B.    Plaintiffs' Allegations Constitute a Material Adverse Effect for the Purposes of Stating a Valid Cause of Action ............................................... 17

    VI.    PLAINTIFFS' CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT IV) STATES A VALID CAUSE OF ACTION ...................................................................................................................... 21

    VII.    PLAINTIFFS STATE A VALID ALTERNATIVE CLAIM FOR UNJUST ENRICHMENT (COUNT VI) .................................................................................. 23

    VIII.    THE COMPLAINT PLEADS A VIABLE CLAIM FOR BREACH OF FIDUCIARY DUTY (COUNT VII) ...................................................................... 24

i

IX.    THE COMPLAINT STATES A VIABLE CLAIM FOR RECISSION (COUNT VII)...................................................................................................................... 26

X.    IF THE COURT IS INCLINED TO GRANT THE MOTION, PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT ............... 27

CONCLUSION........................................................................................................................ 27

CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1 .......................................... 29

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*AEA Middle Market Debt Funding LLC v. Marblegate Asset Mgmt., LLC*,
214 A.D.3d 111 (1st Dep't 2023) ...................................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).............................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................6

*Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*,
2009 WL 362118 (S.D.N.Y. Feb. 9, 2009)...................................................................21

*Boston Consulting Grp., Inc. v. NCR Corp.*,
2020 WL 5731963 (S.D.N.Y. Sept. 24, 2020)..............................................................24

*Brooks v. Key Trust Co. Nat. Ass'n*,
26 A.D.3d 628 (3d Dep't 2006) ....................................................................................25

*CapLOC, LLC v. McCord*,
2020 WL 1036044 (S.D.N.Y. Mar. 3, 2020) ...............................................................24

*Coraud LLC v. Kidville Franchise Co., LLC*,
109 F. Supp. 3d 615 (S.D.N.Y. 2015).............................................................................9

*Cornhusker Farms, Inc. v. Hunts Point Coop. Mkt., Inc.*,
2 A.D.3d 201 (1st Dep't 2003) .....................................................................................14

*Dujardin v. Liberty Media Corp.*,
359 F. Supp. 2d 337 (S.D.N.Y. 2005)...........................................................................14

*Elite Physician Servs., LLC v. Citicorp Payment Servs., Inc.*,
2009 WL 10669137 (S.D.N.Y. Oct. 9, 2009) ...............................................................10

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
837 F. Supp. 2d 162 (S.D.N.Y. 2011)...........................................................................25

*FIH, LLC v. Foundation Cap. Partners LLC*,
920 F.3d 134 (2d Cir. 2019)............................................................................................8

*FlightSafety Intern., Inc. v. Flight Options, LLC*,
194 Fed. App'x 53 (2d Cir. 2006)............................................................................12, 13

*Goodman Mfg. Co. L.P. v. Raytheon Co.*,
  1999 WL 681382 (S.D.N.Y. Aug. 31, 1999)....................................................................10, 21

*Great Rock Cap. Partners Mgmt., LLC v. Wingtip Commc'ns, Inc.*,
  224 A.D.3d 442 (1st Dep't 2024) ...........................................................................................14

*Hard Rock Cafe Int'l (USA), Inc. v. Hard Rock Hotel Holdings, LLC*,
  808 F. Supp. 2d 552 (S.D.N.Y. 2011)......................................................................................23

*Hayden v. County of Nassau*,
  180 F.3d 42 (2d Cir. 1999).......................................................................................................27

*Independent Energy Corp. v. Trigen Energy Corp.*,
  944 F. Supp. 1184 (S.D.N.Y. 1996).........................................................................................11

*IOP Cast Iron Holdings, LLC v. J.H. Whitney Cap. Partners, LLC*,
  91 F. Supp. 3d 456 (S.D.N.Y. 2015)........................................................................................26

*Kreiss v. McCown DeLeeuw & Co.*,
  37 F. Supp. 2d 294 (S.D.N.Y. 1999)..................................................................................13, 15

*LCM XXII Ltd. v. Serta Simmons Bedding, LLC*,
  2022 WL 953109 (S.D.N.Y. Mar. 29, 2022) ...........................................................................23

*In re Lyondell Chem. Co.*,
  567 B.R. 55 (S.D.N.Y. 2017)....................................................................................................20

*Merrill Lynch Co. Inc. v. Allegheny Energy, Inc.*,
  500 F.3d 171 (2d Cir. 2007).....................................................................................................11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Grp., LLC*,
  19 A.D.3d 273 (1st Dep't 2005) ................................................................................................9

*Mfrs. Hanover Tr. Co. v. Yanakas*,
  7 F.3d 310 (2d Cir. 1993)..................................................................................................7, 8, 9

*Morgan Art Found. Ltd. v. Brannan*,
  2020 WL 469982 (S.D.N.Y. Jan. 28, 2020) ............................................................................25

*N. Shore Bottling Co. v. C. Schmidt & Sons, Inc.*,
  239 N.E.2d 189 (N.Y. 1968).....................................................................................................24

*New Moon Shipping Co. v. MAN B&W Diesel AG*,
  121 F.3d 24 (2d Cir. 1997).......................................................................................................17

*New Paradigm Software Corp. v. New Era of Networks, Inc.*,
  107 F. Supp. 2d 325 (S.D.N.Y. 2000)......................................................................................26

*New York Botanical Garden v. Allied World Assur. Co. (U.S.) Inc.*,
   206 A.D.3d 474 (1st Dep't 2022) ...............................................................................22

*Newmont Mining Corp. v. AngloGold Ashanti Ltd.*,
   612 F. Supp. 3d. 223 (S.D.N.Y. 2020)...................................................................19, 20

*Packer v. TDI Sys.*,
   959 F. Supp. 192 (S.D.N.Y. 1997) .............................................................................17

*Pate v. BNY Mellon-Alcentra Mezzanine III, LP*,
   163 A.D.3d 429 (1st Dep't 2018) ...............................................................................14

*Plumitallo v. Hudson Atl. Land Co., LLC*,
   74 A.D.3d 1038 (2d Dep't 2010)................................................................................24

*PRCM Advisers LLC v. Two Harbors Inv. Corp.*,
   2023 WL 5152288 (S.D.N.Y. Aug. 10, 2023)............................................................24

*Prideco Cap. Mgmt. LLC v. Quan*,
   2010 WL 11575285 (S.D.N.Y. Nov. 17, 2010)...........................................................20

*Robinson v. Deutsche Bank Tr. Co. Americas*,
   572 F. Supp. 2d 319 (S.D.N.Y. 2008)...........................................................................7

*Ronzani v. Sanofi S.A.*,
   899 F.2d 195 (2d Cir. 1990).......................................................................................27

*Rubin v. Sabharwal*,
   2018 WL 984844 (Sup. Ct. N.Y. Cty. Feb. 20, 2018) ...............................................26

*Samuels v. Air Transp. Local 504*,
   992 F.2d 12 (2d Cir. 1993)............................................................................................6

*Schaffer v. GeneDx, LLC*,
   2026 WL 265338 (S.D.N.Y. Jan 30, 2026) ...................................................................7

*SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*,
   296 F.R.D. 241 (S.D.N.Y. 2013) ...............................................................................27

*Solutia Inc. v. FMC Corp.*,
   456 F. Supp. 2d 429 (S.D.N.Y. 2006)........................................................................25

*Spinelli v. Nat'l Football League*,
   903 F.3d 185 (2d Cir. 2018).......................................................................................25

*Talansky v. Schulman*,
   2 A.D.3d 355 (1st Dep't 2003) ..................................................................................25

v

*Tanvir v. Tanzin*,
   894 F.3d 449 (2d Cir. 2018)..................................................................................................5

*Van Brunt v. Rauschenberg*,
   799 F. Supp. 1467 (S.D.N.Y. 1992)......................................................................................23

**Other Authorities**

FRCP 12(b)(6) ..........................................................................................................1, 5, 6, 25

FRCP 8(a)(3)......................................................................................................................24, 27

FRCP 8(d)(3) .....................................................................................................................24. 27

FRCP 15(a) ................................................................................................................................27

Plaintiffs, NEXT/INGLE HOLDINGS, LLC, a Delaware limited liability company ("**NIH**") and NEXT NRG OPS, LLC, f/k/a NEXT NRG, LLC, a Delaware limited  liability company ("**NextNRG**", collectively with NIH, "**Plaintiffs**"), through their undersigned counsel, file this Memorandum of Law in opposition to Defendants', GSPP HOLDCO III, LLC, a New York limited liability company ("**GHC III**") and GREEN STREET POWER PARTNERS, LLC, a New York limited liability company ("**GSPP**", collectively with GHC III, "**Defendants**") Motion to Dismiss Plaintiffs' Complaint (Dkt. 1) (the "**Complaint**" or "**Cplt.**") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 14-15) (the "**Motion**").

## PRELIMINARY STATEMENT

This is an extremely straightforward case centered on Defendants' fraud and clear breaches of their contractual duties and not, as Defendants contend, a case of "buyers' remorse." As detailed in the Complaint, the parties entered into a Letter of Intent on September 26, 2024 (the "**LOI**", Cplt. Ex. 2, Dkt. 1-2) concerning Plaintiffs' anticipated purchase of the membership shares in a single purpose company which owned the development rights to a ground mounted solar energy project (the "**Project**") that would enable Plaintiffs to sell electricity generated by the Project to non-party JEA, Inc. ("**JEA**"), a community-owned electric utility company. The LOI explicitly prohibited Plaintiffs from directly communicating with JEA and discussing any of the material terms of a prospective Power Purchase Agreement ("**PPA**") outlined in the LOI. Instead, the PPA negotiations were to be handled by Defendants directly, who were required by the LOI to keep Plaintiffs abreast of the PPA negotiations with JEA.

After the LOI was executed, the parties negotiated a Membership Interest Purchase and Sale Agreement between GHC III and NIH (the "**MIPA**", Cplt. Ex. 1, Dkt. 1-1). Defendants thereafter represented to Plaintiffs that JEA was agreeable to certain anticipated and material terms outlined in the LOI, including, *inter alia*, a PPA Rate of $49 per Megawatt ("**MW**") of electricity

generated from the Project and permitting the Project to access existing JEA easements for a "gen-tie" line to facilitate transmission of electricity to JEA. Based on Defendants' representations, Plaintiffs entered into the MIPA two weeks later.  In the MIPA Defendants represented that they were unaware of any "change, occurrence, fact, event or development, that has a material adverse effect on", *inter alia*, the ability of "the Seller to consummate the Transactions or perform its obligations under this agreement or any other Transaction Document to which Seller is or at Closing shall be a party" or "the ability of the Project Company to develop an operable and revenue producing Project." MIPA, § 1.1. After the transaction closed, Plaintiffs were finally able to communicate directly with JEA. With the ink barely dry on the MIPA, Plaintiffs discovered that Defendants' representations concerning JEA's prospective agreement to material terms of the PPA were unequivocally false. After Defendants refused to indemnify Plaintiffs for their losses as a result of Defendants' fraud and contractual breaches, as explicitly required by the MIPA, this action followed.

The Complaint asserts eight causes of action against Defendants: (i) breach of the LOI; (ii) breach of the MIPA; (iii) fraud in the inducement based on Defendants' material misrepresentations to Plaintiffs relating to the Project prior to entering into the MIPA; (iv) breach of the implied covenant of good faith and fair dealing based on Defendants' actions to deprive Plaintiffs of the benefit of their bargain and to frustrate the purpose of the LOI and MIPA; (v) negligent misrepresentation based on Defendants' material misrepresentations concerning the Project; (vi) unjust enrichment; (vii) breach of fiduciary duty based on Defendants' failures to inform Plaintiffs of information solely within their knowledge that was crucial to the development of the Project; and (viii) recission. In support of these claims, the Complaint sets forth a detailed

factual history and attaches written evidence documenting contemporaneous oral conversations evidencing Defendants' improper conduct.

Defendants move to dismiss each of these claims at the pre-answer, pre-discovery stage of the proceedings. Rather than address the actual claims and facts as set forth in the Complaint, Defendants attempt to reframe the Plaintiffs' claims and misstate the central facts and written contracts upon which they are based. Nothing in the Motion, however, establishes—as a matter of law—that Plaintiffs' well-pleaded Complaint fails to state a claim. Plaintiffs merely seek to enforce the terms of the LOI and MIPA as written, such that they receive the benefit of their multi-million-dollar bargain and are made whole because of Defendants' fraudulent and negligent conduct. In the alternative, Plaintiffs seek to be made whole based on alternative theories of recovery, which are appropriately pled at this early stage of the case. Accordingly, the Motion should be denied, and this action should be decided on the merits.

## SUMMARY OF THE FACTS[1]

### A.    The LOI Protects Plaintiffs from Defendant's Misrepresentations

Beginning in 2024, NextNRG and GSPP began negotiations concerning the development rights to the Project. (Cplt. ¶ 6.) During these negotiations, the parties entered into the LOI. (Cplt. ¶ 7.) Among other things, the LOI sets forth that the basis of the transaction was the sale of electricity generated by the Project to JEA pursuant to a prospective PPA. (*Id.*) The LOI was predicated upon the ongoing PPA negotiations between GSPP and JEA and included as a "Project Assumption" a PPA Rate of $49 per MW. (Cplt. ¶ 9.) Further, the parties understood that the

---

[1]    While Complaint sets forth all of Plaintiffs' detailed factual allegations, the Motion glosses over many of the key issues.  To correct the record, Plaintiffs submit this brief factual summary of the facts at issue.

Project required JEA to permit a "gen-tie" line, to allow the Project to be connected to JEA infrastructure to facilitate transmission of electricity to JEA. (Cplt. ¶ 13.)

While the LOI was largely non-binding, it explicitly carved out two provisions as binding obligations: "Exclusivity" (Section B) and "Confidentiality" (Section H) (*see* LOI § I). Once executed, a 70-day exclusivity period commenced, during which Plaintiffs were barred from contacting JEA directly. (LOI § H.) The Exclusivity provision required GSPP to "keep the buyer up to date regarding all communications with JEA to specifically include information related to any PPA discussions." (LOI § B.) This disclosure obligation was specifically designed to protect Plaintiffs during the period when they were precluded from verifying any information with JEA.

**B.      Two Weeks Before the MIPA is Executed, Defendants Misrepresent the Status of the JEA Negotiations, in Violation of the LOI**

After entering into the LOI, GSPP and NextNRG proceeded to negotiate the MIPA. (Cplt. ¶ 14.) During these negotiations, GSPP did not inform NextNRG that JEA had communicated to GSPP that any of the "Project Assumptions" outlined in the LOI were not acceptable to JEA (*e.g.*, that the PPA Rate of $49/MW was unacceptable to JEA or that JEA would not permit access to its easements for a "gen-tie" line). (*Id.*) Indeed, to the contrary, on December 16, 2024—two weeks before the execution of the MIPA—GSPP's representative affirmatively told Plaintiffs' representative that JEA was ready to move ahead with a PPA Rate of $49/MW and that JEA would include a "gen-tie" line in their easements. (Cplt. ¶ 15.) Unfortunately, it was only after the transaction closed that Plaintiffs discovered GSPP's representations were unequivocally false. (Cplt. ¶¶ 26, 29.)

**C.      Based on Defendants' Misrepresentations, Plaintiffs Enter into the MIPA**

In reliance on Defendants' representations in the LOI and the (false) information provided by Defendants concerning the negotiations with JEA, on December 23, 2024, NIH (as

designee/affiliate of NextNRG) and GHC III (as designee/affiliate of GSPP) entered into the MIPA. (Cplt. ¶ 16.) After the transaction closed, Plaintiffs were no longer contractually precluded from contacting JEA concerning the Project and the PPA; accordingly, Plaintiffs contacted JEA to discuss the terms of a finalized PPA. (Cplt. ¶ 25.) During these discussions, JEA informed Plaintiffs that GSPP had misrepresented the status of and omitted critical facts related to the PPA negotiations. (Cplt. ¶¶ 25-29.)

After discovering Defendants' clear misrepresentations and breach of the LOI, Plaintiffs sought indemnification from Defendants under Section 6.1 of the MIPA which provides that GHC III (as "Seller") would indemnify NIH (as "Buyer") from any and all "Losses" incurred from:

> a.    the breach or inaccuracy of any representation or warranty made by Seller in any Transaction Document;
>
> b.    the breach of, or default under, any covenant or agreement of Seller contained in any Transaction Document;
>
> …
>
> e.    any fraud, intentional misrepresentation or willful misconduct by Seller or any Affiliate of Seller in connection with the Transaction Documents or the Transaction.

MIPA § 6.1.

Despite Plaintiffs' demand for—and clear right to—indemnification, Defendants have failed to indemnify Plaintiff for their Losses.

## ARGUMENT

## I.    LEGAL STANDARD

Defendants move to dismiss Plaintiffs' Complaint for failure to state a valid claim against them under Federal Rule of Civil Procedure ("FRCP") Rule 12(b)(6). When ruling on a motion to dismiss under FRCP 12(b)(6), a court accepts all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Tanvir v. Tanzin*, 894 F.3d 449, 458 (2d Cir.

2018) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss under FRCP 12(b)(6), a court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

## II.   GSPP IS A PROPER PARTY

As a threshold matter, Defendants argue that all claims against GSPP should be dismissed because the MIPA was between GHC III and NIH only, and GSPP was not a party to that contract. However, as set forth in the Complaint, the LOI explicitly identifies the "Buyer" as NextNRG "and/or its designees or affiliates" and the "Seller" as GSPP "or an entity to be designated" (*e.g.*, GHC III). LOI, p. 1. Moreover, Section 2.2 of the MIPA also explicitly provides that the $50,000.00 paid to Seller pursuant to the LOI was paid to the "Seller" as identified therein (MIPA § 2.2) and also provides for specific applicability to the "Affiliates" of the "Seller" therein (*Id.* at § 6.1(d)).

Therefore, at this pre-answer motion to dismiss stage, Plaintiffs have clearly set forth claims against both Defendants as to each of their applicable counts. Accordingly, the Court should decline to dismiss GSPP, especially at this early stage of the proceedings.

III.    DEFENDANTS CANNOT AVOID LIABILITY FOR THEIR MATERIAL
FRAUDULENT MISREPRESENTATIONS

A.    Defendants' Attempt to Craft a Retroactive Release of their Fraudulent
Representations Should be Rejected by the Court

The Complaint sets forth clear and detailed claims for Fraud in the Inducement (Count III)

and Negligent Misrepresentation (Count V) based on a simple factual timeline:

- **September 26, 2024**: the parties execute the LOI, which barred Plaintiffs from contacting JEA directly and required Defendants to "keep [Plaintiffs] up to date regarding all communications with JEA to specifically include information related to any PPA discussions." (Cplt. ¶ 11.)

- **November 2024**: JEA tells Defendants that the proposed PPA Rate of $49/MW was unacceptable and that JEA would not permit a "gen-tie" line for the Project. (Cplt. ¶ 29.)  This information was not disclosed to Plaintiffs. (Cplt. ¶ 30.)

- **December 16, 2024**: Defendants' representative specifically informs Plaintiffs' representative that JEA was ready to move ahead with a PPA Rate of $49/MW and that JEA was ready to include a "gen-tie" line in their easements. (Cplt. ¶ 15.)

- **December 23, 2024**: The parties execute the MIPA. (Cplt. ¶ 16.)

It is hard to imagine a more straightforward case of fraudulent inducement or negligent

misrepresentation.

Faced with this damning timeline, Defendants attempt to retreat behind two provisions in

the MIPA: the integration clause (Section 9.8) and the "as-is" clause (Section 9.16).  In making

this argument, Defendants contort the MIPA and New York law to craft a retroactive release of

their fraud. However, New York law is clear, "a general merger clause does not, standing alone,

preclude a claim of fraudulent inducement." *Robinson v. Deutsche Bank Tr. Co. Americas*, 572 F.

Supp. 2d 319, 323 (S.D.N.Y. 2008).

"In analyzing the effect of a merger clause, New York courts distinguish between a general

merger clause and specific disclaimers of reliance." *Schaffer v. GeneDx, LLC*, 2026 WL 265338,

7

at *10 (S.D.N.Y. Jan 30, 2026). "General" merger clauses resemble "an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made." *Mfrs. Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993) (internal quotation marks omitted). "When, however, the contract states that a contracting party disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations." *Id.* A merger clause does not serve "as a catch-all disclaimer of reliance on any conceivable pre-contract misrepresentations about facts pertaining to the subject matter of the contract that could form the basis of a claim for fraud in the inducement." *FIH, LLC v. Foundation Cap. Partners LLC*, 920 F.3d 134, 143 (2d Cir. 2019).

Here, both the integration clause (Section 9.8) and the "as-is" clause (Section 9.16) in the MIPA are undisputably "general" merger clauses:

> Entire Agreement.  This Agreement, including the Schedules and Exhibits hereto, and the documents executed in connection herewith constitute the entire agreement among the Parties with respect to the subject matter hereof and thereof and supersede any prior understandings, negotiations, agreements, or representations among the Parties of any nature, whether written or oral, to the extent they relate in any way to the subject matter hereof or thereof.

MIPA § 9.8.

> As-Is Purchase.  BUYER ACKNOWLEDGES AND AGREES THAT IT IS ACQUIRING THE MEMBERSHIP INTERESTS OF THE PROJECT COMPANY AS IS, AND THAT THE ONLY WARRANTIES OR REPRESNTATIONS MADE BY THE SELLER REGARDING THE MEMBERSHIP INTERESTS, PROJECT COMPANY, PROJECT, PROJECT SITE, OR ANYTHING RELATED THERETO ARE PROVIDED FOR IN THIS AGREEMENT.  SELLER DISCLAIMS ANY OTHER REPRESENTATIONS OR WARRANTIES, EXCEPT AS MADE BY SELLER IN ARTICLE 3 AND HEREBY DISCLAIMS ALL LIABILITY FOR ANY REPRESENTATION, WARRANTY, FORECAST, OR INFORMATION FURNISHED (ORALLY OR IN WRITING) TO BUY OR ANY OF ITS AFFILIATES OR

> REPRESSNETATIVES, BUYER ACKNOWLEDGES THAT IT IS ACCEPTING THE MEMBERSHIP INTERESTS IN THEIR AS IS CONDITION, AND ASSUMES THE RISK ASSOCIATED WITH SUCH INTERESTS.

MIPA § 9.16.

Neither the integration clause nor the "as-is" clause contains a release of any claim for Defendants' fraud. As such, these clauses are not sufficiently specific to preclude Plaintiffs' fraudulent inducement and negligent misrepresentation claims. *See Yanakas*, 7 F.3d at 317 (noting that in cases where a fraud claim is dismissed due to an integration clause, "the disclaimer has been sufficiently specific to match the alleged fraud"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Grp., LLC*, 19 A.D.3d 273, 275 (1st Dep't 2005) ("[A] general merger clause such as that contained in the parties' agreement does not operate to bar parol evidence of fraud in the inducement….").

In support of this portion of their Motion, Defendants rely principally on *Coraud LLC v. Kidville Franchise Co., LLC*, 109 F. Supp. 3d 615, 619 (S.D.N.Y. 2015). That reliance is misplaced. In *Coraud*, this court set forth the "general rule" with respect to fraudulent inducement and disclaimers of reliance:

> where a contract contains a disclaimer of reliance on certain representations, a party cannot, in a subsequent action . . . claim it was fraudulently induced to enter into the contract by the very representation it has disclaimed reliance upon, so long as (1) the disclaimer is made sufficiently specific to the particular type of fact misrepresented or undisclosed; and (2) the alleged misrepresentations or omissions did not concern facts peculiarly within the seller's knowledge.

*Id.* (cleaned up).

Defendants' arguments fail to meet either prong of the "general rule" because, as set forth above, the "general" disclaimers are insufficiently specific and, crucially, Defendants' misrepresentations were solely in their knowledge. Indeed, Plaintiffs were contractually prohibited

9

from communicating directly with JEA and performing their own diligence into the PPA negotiations, and Defendants were obligated to keep Plaintiffs "up to date regarding all communications with JEA to specifically include information related to any PPA." (Cplt. ¶¶ 57, 78; LOI § B.)

Defendants' reliance on *Elite Physician Servs., LLC v. Citicorp Payment Servs., Inc.*, 2009 WL 10669137 (S.D.N.Y. Oct. 9, 2009) and *Goodman Mfg. Co. L.P. v. Raytheon Co.*, 1999 WL 681382 (S.D.N.Y. Aug. 31, 1999) is similarly without basis.

In *Goodman*, this Court granted a motion to dismiss a breach of contract claim in the face of an integration clause and an "as-is" clause. 1999 WL 681382 at *14. However, the Court explicitly noted that the claim "rests on the representation of future earnings or prospects." *Id.* That is not the case here, where Defendants lied to Plaintiffs about the state of negotiations with JEA and hid information that would have been crucial to Plaintiffs' decision to enter into the MIPA (or not).

Likewise, in *Elite Physician Servs.*, this Court granted a motion to dismiss under wholly different circumstances. 2009 WL 10669137 at *6-8. There, the Court (analyzing both New York and Tennessee law) found that certain representations concerning the defendant's "world class" systems and "vast resources" were nonactionable because the agreement was silent "about the type or quality of technology [the defendant] is required to provide." *Id.* at *8. Here, Defendants' misrepresentations are completely distinguishable—they were aware of JEA's position on the PPA Rate and the "gen-tie" agreements but affirmatively represented to Plaintiffs that JEA's position was completely different.

This is not a case of "puffery" or "buyer beware" as Defendants argue. To the contrary, Defendants' outright lies caused Plaintiffs to enter into the MIPA at a time when Plaintiffs were

10

contractually barred from conducting their own due diligence into the veracity of Defendants' statements. Accordingly, Plaintiffs' fraudulent inducement and negligent misrepresentation claims should not be dismissed due to the integration and "as-is" clauses.

> **B.    The Fraudulent Inducement and Negligent Misrepresentation Causes of Action are not Duplicative of Plaintiffs' Breach of Contract Claims**

Defendants next seek to dismiss Plaintiffs' claims for Fraud in the Inducement and Negligent Misrepresentation on the ground that these claims are "duplicative" of Plaintiffs' Breach of Contract claims (*see* Motion p. 9). However, the legal authorities upon which Defendants rely make clear that Plaintiffs can bring these claims in addition, and as an alternative, to its Breach of Contract claims.

As stated in one of the very first cases cited by Defendants in their Motion, New York law permits a fraud claim to proceed in connection with a breach of contract claim where a defendant misrepresents a "presently existing fact":

> Under New York law, acts that give rise to a breach of contract claim may also support a distinct claim for fraud if the defendant misrepresents a presently existing fact. Accordingly, a contracting party can be held liable for fraud if, at the time of contracting, the party made a false statement of intention that relates to an agreement between the parties.

*Independent Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184, 1197-98 (S.D.N.Y. 1996) (internal citations and quotations omitted). This is exactly what occurred here. Defendants specifically represented that JEA would proceed with the $49/MW PPA Rate and the "gen-tie" agreement when, in fact, JEA had told Defendants before the MIPA was entered into that JEA would not agree to those PPA terms. *See Merrill Lynch Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007) (noting that "parallel fraud and contract claims may be brought if the plaintiff … points to a fraudulent misrepresentation that is collateral or extraneous to the contract" by alleging that the defendant made "a misrepresentation of present fact [which] gives rise to a

separate action for fraudulent inducement."). Accordingly, Plaintiffs' fraudulent inducement and negligent misrepresentation claims are not duplicative of their breach of contract claims and should not be dismissed.

**IV.    DEFENDANTS BREACHED THE LOI BY FAILING TO PROVIDE PLAINTIFFS WITH INFORMATION RELATING TO THE PPA NEGOTIATIONS**

**A.    Plaintiffs' Claim for Breach of the LOI is not Barred by the Integration Clause in the MIPA**

Defendants first argue that Count I for Breach of the LOI should be dismissed because it is barred by the integration clause in the MIPA, which Defendants argue supersedes the LOI, and because of the disclaimer language contained in Section I of the LOI, despite this disclaimer explicitly excepting the provision upon which this claim is based. Defendants' arguments lack merit—particularly on a pre-answer motion to dismiss—where there are significant questions as to whether the obligations under the LOI are separate and distinct from the MIPA. *See FlightSafety Intern., Inc. v. Flight Options, LLC*, 194 Fed. App'x 53, 54-55 (2d Cir. 2006) (reversing dismissal of breach of contract claim arising from prior contract).

The actual claim plead by Plaintiffs explicitly alleges that it is brought under Section B of the LOI, captioned "Exclusivity," which required Defendants to "keep the Buyer up to date regarding all communications with JEA to **specifically include information related to any PPA discussions.**" (LOI § H; emphasis added). Indeed, Section I of the LOI ("Nature of this Agreement") explicitly provides that these provisions survive any termination or breach of the LOI and are not subject to the disclaimer language relied upon by Defendants, as follows:

> **Except for sections B. Exclusivity and H. Confidentiality of this Agreement,** this LOI i) does not constitute a binding obligation on either Party; ii) may not contain all matters upon which agreement must be reached for the transaction to be consummated; and iii) creates no rights in favor of either Party (except with respect to the Exclusivity Period). All of the information that the Buyer is relying

12

> upon in making this transaction has been supplied by the project developer, National Solar. The Seller shall not be liable for any errors or omissions. Neither Party shall be liable for any damages of any nature, other than actual damages, for any reason, including without limitation the breach of this LOI, any termination of this LOI, or whether such liability is asserted on the basis of contract, tort (including negligence or strict liability) or otherwise, even if the Party has been advised of the possibility of such damages. In no event shall either Party be liable for lost profits or lost business opportunities arising out of this LOI. A binding commitment with respect to the proposed transaction will result only upon the execution of a MIPA signed by each Party.

*Id.* § I (emphasis added).

The Motion simply ignores this language, as well as Defendants' obligations under the LOI, and attempts to rewrite the LOI to justify dismissal of Count I with prejudice. Defendants also conveniently ignore the specific factual allegations that Defendants had actual notice from JEA that contradicted their express representations and the economic and infrastructure "assumptions" set forth as the economic basis for the LOI and the transaction it contemplated.

It is crucial that Defendants' breach of the LOI pre-dates the integration clauses contained in the MIPA. Here, Defendants breached the LOI by failing to advise Plaintiffs of the status of the negotiations with JEA, which the LOI contractually obligated them to do. The MIPA, however, does not specifically address the status of the JEA negotiations. This is extremely similar to *FlightSafety*, where the Second Circuit reversed the dismissal of a breach of contract action based on an integration clause in a subsequent contract. 194 Fed. App'x at 54-55. The Second Circuit found that the contracts concerned different, but overlapping, issues and, given the relationship of the parties, there was a question of fact concerning the parties' intent. *Id.* at 55. Accordingly, the Second Circuit found that it was "inappropriate" to have dismissed the claims "at the pleading stage." *Id.* at 55, 56; *see also Kreiss v. McCown DeLeeuw & Co.*, 37 F. Supp. 2d 294, 301 (S.D.N.Y. 1999) (second contract only superseding some aspects of first contract).

13

The same is true here. The Complaint relies on the written terms of the LOI that explicitly bound Defendants and survived any termination of the same to allege that Defendants breached the same based upon actions that pre-dated the MIPA, as supported by evidence in the form of attached written communications.

In support of their arguments, Defendants cite inapplicable and easily distinguishable cases. For instance, *Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337 (S.D.N.Y. 2005) not only involved a summary judgment motion—not a pre-answer motion to dismiss before any discovery has been conducted—but was also based upon "a breach of contract claim against Livewire for failing to live up to Beddow's alleged promise to make Dujardin head of Livewire's Network Division as part of the consideration for Dujardin entering into the Merger Agreements." *Id.* at 355-56. It does not establish that an integration clause nullifies an earlier, separate agreement where the parties expressly provided that certain obligations survive termination.

Each case cited in support of Defendants' argument is based upon alleged prior agreements that were subsequently reduced to writing or consecutive agreements that covered the exact same subject matter. *See Pate v. BNY Mellon-Alcentra Mezzanine III, LP*, 163 A.D.3d 429, 430 (1st Dep't 2018) ("the merger clause in the release is not a general merger clause but by its express terms supersedes "any prior term sheet or correspondence," which is the basis for plaintiff's claims"); *Great Rock Cap. Partners Mgmt., LLC v. Wingtip Commc'ns, Inc.*, 224 A.D.3d 442 (1st Dep't 2024) (finding that the claim "arises from plaintiff's alleged 'oral representations' as to whether that term sheet accurately reflected what defendant's reporting and auditing obligations would be"); and *Cornhusker Farms, Inc. v. Hunts Point Coop. Mkt., Inc.*, 2 A.D.3d 201, 203 (1st Dep't 2003) (claims based upon non-compliance with plans that because "the Plans are not referenced anywhere in the contractual writings signed by the parties, namely, the Subscription

14

Agreement, the Side Letter and the June 2000 letter agreement"). By contrast, Plaintiffs' claims for breach of the LOI are brought under provisions that survive termination and also set forth that Defendants' breached obligations governing their conduct **prior to** the execution of any subsequent agreement, such that it quite obviously could not cover the same subject matter—*i.e.*, Defendants' obligation to inform Plaintiffs concerning the status of the JEA negotiations. *See Kreiss*, 37 F. Supp. 2d at 301 (agreement "only supersedes prior agreements concerning the same subject matter").

**B.      The LOI Expressly Excludes the "Exclusivity" and "Confidentiality" Provisions from the "Errors and Omissions" Provision**

Defendants also argue that Count I should be dismissed because the LOI contains disclaimer language relating to "any errors or omissions" in Section I. However, Defendants' argument ignores the beginning of Section I, which provides that it does not apply to "sections B. Exclusivity and H. Confidentiality" – the LOI provisions upon which Count I is based. Therefore, Plaintiffs set forth a valid claim against Defendants for breach of the LOI based upon provisions that expressly survived and conduct that pre-dated the MIPA. Accordingly, the Court should deny the Motion as to Count I.

**V.      THE COMPLAINT SETS FORTH A CAUSE OF ACTION FOR BREACH OF THE MIPA**

Defendants also seek to dismiss Plaintiffs' extensively plead claim for breach of the MIPA (Count II) because, according to Defendants, the LOI does not constitute a "Transaction Document" under the broad definitions contained in the MIPA for purposes of invoking the MIPA's indemnification requirements. Defendants also argue that Count II should be dismissed because the allegations that JEA explicitly advised Defendants that it would not agree to the financial and infrastructure "assumptions" cannot constitute a "Material Adverse Effect" ("**MAE**") despite the encompassing definition of a MAE in the MIPA. Neither argument holds any weight.

15

It should be noted that Plaintiffs explicitly pled multiple grounds to support their claim for breach of the MIPA, including that Defendants failed to indemnify Plaintiffs for losses based Defendants' default under, and breach of any Transaction Documents and any fraud, intentional misrepresentation or willful misconduct in connection with the Transaction Documents or the transaction itself. (Cplt. ¶ 45.) Plaintiffs also allege that Defendants breached representations and warranties contained in the MIPA, including those related to knowledge of the existence of any MAE. (*Id.* ¶¶ 21-23, 32, 46, 49.) These representations and warranties also include a Non-Contravention provision wherein Defendants warranted that their entering into the MIPA would not "violate or result in a breach of any agreement, Contract, lease, license, instrument or other arrangement to which Seller or its Affiliates is a party or by which any of its respective properties are bound." (MIPA § 3.3.) Defendants' arguments to the contrary fail as a matter of law.

### A.    The LOI is a Transaction Document under the MIPA.

Defendants first argue that Count II should be dismissed because the LOI is not a "Transaction Document" such that they would be obligated to indemnify Plaintiffs. The relevant definitions of these terms contained in the MIPA are extremely broad:

> "**Transaction Documents**" means this Agreement, the Assignment and Assumption Agreement, the assignment and assumption of the Development Services Agreement, **and all other agreements, certificates and other documents between Buyer and Seller or their Affiliates entered into pursuant to the terms hereof in order to carry out the Transactions**.

> "**Transactions**" means the transactions contemplated in this Agreement **and the other Transaction Documents**, including **but not limited to the** purchase and sale of the Membership Interests.

(MIPA, § 1.1; emphasis added). The LOI required payment of a $50,000.00 deposit included in Section 2.2 Purchase Price –  not "as an offset of the purchase price" as alleged by Defendants. This establishes, at this early stage of litigation, that the LOI constitutes a "document between

Buyer and Seller or their Affiliates entered into pursuant to the terms hereof in order to carry out the Transactions" such that Defendants breached the indemnification requirements in the MIPA relating to "Losses" to Plaintiffs resulting from Defendants' tortious conduct." (MIPA at § 2.2.)

In support of this seemingly foreclosed argument, Defendants cite to cases to show the LOI was not "incorporated into the Agreement as a Transaction Document" (Motion at p. 12),[2] which is not determinative as to whether the LOI would fall within the broad Transactional Document definition for purposes of a motion to dismiss. *See Packer v. TDI Sys.*, 959 F. Supp. 192, 198 (S.D.N.Y. 1997) ("As discussed below, the Letter Agreement does not incorporate the Note's or the Subordination Agreement's forum selection clause…"); *New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997) ("…it has been held that language similar to that at issue here was part of a 'crystal clear' incorporation-by-reference clause."). Such cases are not applicable to the facts here and are not controlling in this case.

Therefore, the LOI is a "Transaction Document" under the MIPA for purposes of Plaintiffs' claims in Count II for Breach of the MIPA, and Plaintiffs are entitled to every reasonable inference on this Motion to Dismiss.

**B.      Plaintiffs' Allegations Constitute a Material Adverse Effect for the Purposes of Stating a Valid Cause of Action**

Defendants also argue that Count II should be dismissed because Plaintiffs "would need to allege that JEA's purported representations (assuming they are accurate) had a Material Adverse Effect under one of the four subsections of Section 1.1. Plaintiffs do not make such an allegation." (Motion at p. 14.) That argument strains both credibility and logic.

---

[2]      Defendants, of course, seek to 'have their cake and eat it too' – on one hand arguing that the LOI is explicitly superseded by the MIPA while, on the other hand, arguing that the LOI is not a "Transaction Document."  This is yet another reason why dismissing Counts I and II of the Complaint on a motion to dismiss would be inappropriate.

Defendants attempt to manufacture ambiguity despite specific allegations that: a) Defendants' representations regarding knowledge of any MAE were bargained for precisely because Plaintiffs were precluded from communicating with JEA under the LOI prior to execution of the MIPA (Cplt. ¶ 21); b) Plaintiffs suffered "Losses" as a direct result of Defendants' actions, including by falsely representing they had no knowledge of the existence of any MAE (Cplt. ¶ 35); and c) Plaintiffs provided Defendants with multiple demand letters, explicitly advising how Defendants' breaches caused damage to Plaintiffs (Cplt. ¶¶ 33, 47, Ex. 3).  Rather, Defendants again misstate Plaintiffs' claims as centering upon a lack of written "warranties relating to pricing or a gen-tie easement" (Motion p. 14) rather than Plaintiffs' explicit quotation of and citation to the bargained for written terms of the MIPA.

In making this argument, Defendants implore the Court to "interpret the MIPA as a whole" and its provisions should be "construed in accordance with the parties' intent." However, Plaintiffs' interpretation of the MIPA is the only view in which all of the terms of the MIPA and the Transaction Documents, as well as the parties' intent, can be harmonized such that all of the obligations, representations, and requirements of the parties thereto are effectuated. On the other hand, Defendants argue that the Court should essentially rewrite the MIPA by ignoring the broad definitions and protections contained therein.

Under Defendants' misinterpretation of the MIPA, JEA informing Defendants that the financial and infrastructure "assumptions" that formed the basis for the same, and are set forth in an exhibit thereto, would not constitute a MAE. To the contrary, the definition of Material Adverse Effect is broad:

> **any change, occurrence, fact, event or development**, that has a material adverse effect on (a) the business, the Membership Interests, the assets, Liabilities, results of operation or condition (financial or otherwise) of the Seller, the Project Company, or the

Project, (b) the ability of the Seller to **consummate the Transactions or perform its obligations under this agreement or any other Transaction Document** to which Seller is or at Closing shall be a party or (c) the Site Host's ability to perform its obligations under any Real Property Documents or other Project Contracts to which the Site Host is party; or (d) **the ability of the Project Company to develop an operable and revenue producing Project**.

MIPA, § 1.1 (emphasis added).

In support of this argument, Defendants also cite to a disclaimer contained in a footnote in Exhibit D of the MIPA – that merely disclaims liability for "any errors, mistakes, or inaccuracies" of the "assumptions" contained therein (MIPA Ex. D) – to stand for the proposition that Defendants were never obligated to inform Plaintiffs that JEA had rejected the financial "assumptions" set forth on that very exhibit, thereby converting what had been labeled as "assumptions" into known, material facts that Defendants were obligated to disclose under the MIPA.

Finally, Defendants also attempt to rely upon the "as-is" clause in the MIPA, despite the fact that the very clause Defendants block-quote in the Motion expressly provides that it applies to representations and warranties "**EXCEPT AS MADE IN ARTICLE 3**…" (MIPA § 9.16; emphasis added)—the same article is explicitly cited as the basis for Plaintiffs' claims in Count II.

Defendants' legal arguments fair no better. In fact, the majority of cases cited by Defendants make clear that similar provisions are subject to a fact-sensitive inquiry and are interpreted "in the context of the [agreement] as a whole and construed in accordance with the parties' intent." *Newmont Mining Corp. v. AngloGold Ashanti Ltd.*, 612 F. Supp. 3d. 223, 246 (S.D.N.Y. 2020); *see also In re Lyondell Chem. Co.*, 567 B.R. 55, 123 (S.D.N.Y. 2017) ("Indeed, New York courts interpret MAE provisions "in the context of the entire agreement, and in conjunction with other evidence of the parties' intent," including separately executed and/or contemporaneous other documents.")

19

In fact, in *Newton Mining Corp.* this Court noted that it must consider "whether the alleged material adverse change was within the contemplation of the parties **at the time they executed the agreemen**t, whether it was **within the control of the parties**, and the **magnitude of the impact on the relevant party's business**" such that a MAE provision is "best read as a backstop protecting the acquiror from the occurrence of **unknown events that substantially threaten the overall earnings potential of the target** in a durationally-significant manner." 612 F. Supp. 3d at 246 (internal quotation marks and citations omitted) (emphasis added); *see also In re Lyondell Chem. Co.*, 567 B.R. at 150 (where the Court, following a bankruptcy trial, declined to "stretch the [MAE] clause to include" a solvency clause at the time of drawing funds under a credit agreement because "[t]he inclusion of a solvency requirement at the time of closing highlights the lack of such requirement at the time of a loan draw request."). This fact-sensitive inquiry is not properly before the Court on a motion to dismiss.

Defendants also errantly rely upon a disclaimer related to accuracy, errors, and omissions by Defendants contained in a footnote in an exhibit to the MIPA to control over the extensive MAE language and warranties that Plaintiffs specifically bargained for. Unlike Plaintiffs' claims, the cases cited by Defendants in support of this argument involve claims based upon post-agreement conduct and were brought in reliance upon extra-contractual provisions not contained in the governing contract, including in fraud claims. *See Prideco Cap. Mgmt. LLC v. Quan*, 2010 WL 11575285, at *4 (S.D.N.Y. Nov. 17, 2010) (restating the Court previously dismissed a fraud claim where a "specific disclaimer clause barred any reliance…on any representations **outside the contract**.") (emphasis added); *Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, 2009 WL 362118, at *16-17 (S.D.N.Y. Feb. 9, 2009) (granting motion to dismiss because "[w]hat plaintiff describes is merely an unenforceable **agreement-to-agree** which plaintiff concedes is

20

unenforceable.") (emphasis added); *Goodman*, 1999 WL 681382 at \*14 ("Because the thrust of plaintiffs' breach of contract claim **clearly rests on the representation of future earnings or prospects of the Acquired Business**, they have failed to state a claim entitling them to relief") (emphasis added).

Here, the Complaint asserts claims under the specifically quoted and cited representations, warranties, and indemnification provisions contained in the MIPA regarding Defendants' knowledge at the time the MIPA was executed. Further, Plaintiffs were contractually barred from communicating with JEA until after the MIPA was executed and, moreover, Defendants were obligated to keep Plaintiffs appraised of all communications with JEA regarding those exact terms. LOI, § B.

Therefore, the Motion as to Count II for Breach of the MIPA should be denied because Plaintiffs have alleged valid claims for breach pursuant to the terms contained in the MIPA and the arguments set forth by Defendants in the Motion are nonsensical and based upon inapplicable case law.

## VI. PLAINTIFFS' CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT IV) STATES A VALID CAUSE OF ACTION

Defendants also seek dismissal of Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count IV) as "duplicative" of Plaintiffs' breach of contract claims. This, too, fails as a matter of law.

It is well settled that a breach of the implied covenant claim is "not duplicative of a breach of contract claim where the complaint alleges conduct that is separate from the conduct constituting the alleged breach of contract and such conduct deprived the other party of the benefit of its bargain." *AEA Middle Market Debt Funding LLC v. Marblegate Asset Mgmt., LLC*, 214 A.D.3d 111, 133 (1st Dep't 2023); *see also New York Botanical Garden v. Allied World Assur. Co. (U.S.)*

21

*Inc.*, 206 A.D.3d 474, 476 (1st Dep't 2022) (same). Here, the Complaint has sufficiently alleged that Defendants' actions frustrated the rights and reasonable expectations of Plaintiffs and, as a result, Plaintiffs' concurrent pleading of breach of contract and breach of implied covenant of good faith and fair dealing claims is permitted.

As set forth above, the Complaint asserts two separate and distinct causes of action for breach of contract. The first (Count I) is based on allegations that Defendants breached the LOI by failing to keep Plaintiffs up to date regarding their communications with JEA. (Cplt. ¶¶ 38-41). The second (Count II) is based on allegations that Defendants breached the MIPA by failing and refusing to indemnify and reimburse Plaintiffs pursuant to Section 6.1 thereof. (Cplt. ¶¶ 44-49). Plaintiffs' breach of the implied covenant claim (Count IV), however, alleges that Defendants engaged in bad faith conduct that "frustrated the purpose of the MIPA and NIH's expectations thereunder" and withheld "the benefit of the MIPA from NIH" by failing to disclose to Plaintiffs that JEA had informed Defendants that the PPA Rate and "gen-tie" PPA terms presented in the LOI were not acceptable to JEA, at a time when Defendants knew Plaintiffs were precluded from contacting JEA directly to confirm these material PPA terms were acceptable to JEA. (Cplt. ¶¶ 63-71).

There is no redundancy whatsoever with the allegations in the second count for breach of the indemnity provisions in the MIPA. Even if the Court were to find some overlap between these claims, at this early stage, pleading a breach of the implied covenant claim in the alternative is permissible "when there is a bona fide dispute over whether a contract covers the contested issue." *LCM XXII Ltd. v. Serta Simmons Bedding, LLC*, 2022 WL 953109, at *15 (S.D.N.Y. Mar. 29, 2022). Indeed, "where the existence or meaning of a contract is in doubt, a party may plead a claim for breach of the covenant of good faith and fair dealing in the alternative.… Alternative pleading

22

is permitted because [a] party is only precluded from recovering on both theories at the same time."

*Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 567

(S.D.N.Y. 2011) (quotation marks and citation omitted).  As set forth above, Defendants contend

that Plaintiffs' breach of the LOI and MIPA claims fail on multiple grounds. (Motion pp. 8-18).

Accordingly, this claim may be plead in the alternative as there is a dispute over whether the LOI

and MIPA cover the contested issue.

## VII.    PLAINTIFFS STATE A VALID ALTERNATIVE CLAIM FOR UNJUST ENRICHMENT (COUNT VI)

Defendants' argument that Plaintiffs cannot plead an unjust enrichment claim because of

the existence of an enforceable contract is in contravention of well settled case law, the Federal

Rules of Civil Procedure, and the very common and permissible practice of pleading alternative

theories of recovery.

To successfully plead unjust enrichment under New York law, "a plaintiff must

demonstrate that a) the defendant was enriched; b) the enrichment was at the plaintiff's expense;

and c) the defendant's retention of that benefit would be unjust." *Van Brunt v. Rauschenberg*, 799

F. Supp. 1467, 1472 (S.D.N.Y. 1992) (citations omitted). While unjust enrichment is a quasi-

contractual claim that is ordinarily unavailable when a valid and enforceable contract governing

the same subject matter exists, "'[w]here, as here, there is a bona fide dispute as to the existence

of a contract, ***or where the contract does not cover the dispute in issue***, a plaintiff may proceed

upon a theory of quasi-contract as well as breach of contract and will not be required to elect his

or her remedies.'" *CapLOC, LLC v. McCord*, 2020 WL 1036044, at *16 (S.D.N.Y. Mar. 3, 2020)

(quoting *Plumitallo v. Hudson Atl. Land Co., LLC*, 74 A.D.3d 1038, 1039 (2d Dep't 2010))

(emphasis added). The Federal Rules of Civil Procedure provide Plaintiffs with the absolute right

23

to request alternative types of relief and to assert alternative theories of recovery whether based on legal or equitable grounds or both. FRCP 8(a)(3) and 8(d)(3).

Here, as set forth above, Defendants not only claim that they did not breach the LOI or MIPA, but they also argue that a cause of action for breach of contract does not lie under either contract. (*See* Motion pp. 8-18). Under these circumstances, it is respectfully submitted that Plaintiffs have stated an alternative cause of action for unjust enrichment and should not be required to make an election of remedies at this early stage of the proceedings.

## VIII.    THE COMPLAINT PLEADS A VIABLE CLAIM FOR BREACH OF FIDUCIARY DUTY (COUNT VII)

Defendants also argue that Plaintiffs' breach of fiduciary duty claim (Count VII) is "duplicative" of their breach of contract claims. (Motion pp. 22-23). However, a "'contracting party may be charged with a separate tort liability arising from a breach of duty distinct from, or in addition to, the breach of contract.'" *Boston Consulting Grp., Inc. v. NCR Corp.*, 2020 WL 5731963, at *4 (S.D.N.Y. Sept. 24, 2020) (quoting *N. Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 239 N.E.2d 189, 193 (N.Y. 1968)). "It is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, 2023 WL 5152288, at *11 (S.D.N.Y. Aug. 10, 2023) (cleaned up).  To maintain such a claim, "a plaintiff must 'set[] forth allegations that, apart from the terms of the contract, the parties created a relationship of higher trust than would arise from [their contracts] alone so as to permit a cause of action for breach of a fiduciary duty independent of the contractual duties.'" *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 196 (S.D.N.Y. 2011) (quoting *Brooks v. Key Trust Co. Nat. Ass'n*, 26 A.D.3d 628 (3d Dep't 2006)).

"'A fiduciary relationship exists under New York law when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Morgan Art Found. Ltd. v. Brannan*, 2020 WL 469982, at \*20 (S.D.N.Y. Jan. 28, 2020) (quoting *Spinelli v. Nat'l Football League*, 903 F.3d 185, 207 (2d Cir. 2018). Because "[t]he existence of a fiduciary duty normally depends on the facts of a particular relationship," a claim for breach of fiduciary duty "usually is not subject to dismissal under Rule 12(b)(6)." *Id.*, at \*20 (quotation marks and citation omitted).

New York law recognizes that a fiduciary duty may arise out of "a relationship of confidence, trust, or superior knowledge or control." *Solutia Inc. v. FMC Corp.*, 456 F. Supp. 2d 429, 456 (S.D.N.Y. 2006) (quotation marks and citation omitted). "In particular, **a fiduciary duty may arise from a business transaction where 'defendant had superior expertise or knowledge about some subject and mislead plaintiff by false representations concerning that subject**.'" *Id.* (quoting *Talansky v. Schulman*, 2 A.D.3d 355, 360 (1st Dep't 2003)) (emphasis added).

Here, the Complaint contains detailed allegations demonstrating the basis for Plaintiffs' breach of fiduciary duty claim. First, the Complaint alleges that Defendants had superior knowledge regarding the transaction as the LOI explicitly precluded Plaintiffs from contacting JEA directly about the Project and the prospective PPA. The Complaint also alleges that, prior to execution of the MIPA, Defendants misled Plaintiffs by making false representations that: (i) "JEA was ready to move ahead with a PPA Rate of $49 per MW for energy and that JEA was also ready to include a "gen-tie" line in their easement(s)", and (ii) Defendants were unaware of any MAE in the MIPA, on which Plaintiffs relied in entering into the MIPA. (Cplt. ¶¶ 15-16, 21-23). These representations, as discussed above, were knowingly false.

This is not a situation where a defendant has knowledge of a subject, which the plaintiff could have obtained information about but failed to do so. On the contrary, Plaintiffs were explicitly precluded from contacting JEA regarding the PPA and relied on Defendants to keep them up to date regarding information related to discussion/negotiation of the terms of the PPA, as required by the LOI. (Cplt. ¶ 27). Given that Defendants dispute that they breached the LOI by failing to disclose these communications with JEA to Plaintiffs, and contend that a cause of action for breach of contract does not lie under either contract (*see* Motion pp. 8-18), Plaintiffs should not be precluded, at this early stage of the action, from asserting a claim for breach of fiduciary duty as an alternative theory of liability.

## IX.     THE COMPLAINT STATES A VIABLE CLAIM FOR RECISSION (COUNT VII)

Under New York law, a cause of action for rescission is generally recognized as a valid and distinct claim that should not be dismissed as duplicative of a breach of contract claim. *IOP Cast Iron Holdings, LLC v. J.H. Whitney Cap. Partners, LLC*, 91 F. Supp. 3d 456, 479 (S.D.N.Y. 2015) ("Rescission is an appropriate remedy for fraudulent misrepresentations, and not duplicative of a contract claim because it seeks to undo the contract itself."). Indeed, as a general matter, recission is an available remedy in cases where, as here, a plaintiff has alleged "fraud in the inducement of the contract." *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000). A claim for rescission can also be affirmatively asserted where, as here, it goes hand and hand with a breach of contract claim. *See Rubin v. Sabharwal*, 2018 WL 984844, at *3 (Sup. Ct. N.Y. Cty. Feb. 20, 2018) (denying motion to dismiss rescission claim "at this preliminary phase" as it "is an equitable remedy for a breach of contract claim and as such is interrelated to the breach of contract cause of action").

Defendants contend that Plaintiffs' request for rescission of the MIPA is foreclosed by Plaintiffs' request for monetary damages.  For pleading purposes, Plaintiffs allege this magnitude

26

of breach, seeking not only recovery of the purchase price but a return to the pre-agreement status quo. As set forth above, at the pleading stage, a party is entitled to plead in the alternative, *see* FRCP 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency"), and is not required to elect between legal and equitable relief, *see* FRCP 8(a)(3) ("a demand for the relief sought … may include relief in the alternative or different types of relief."). Accordingly, at this early stage of the proceedings, Plaintiffs' recission claim should stand.

## X.    IF THE COURT IS INCLINED TO GRANT THE MOTION, PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND THE COMPLAINT

For the reasons set forth herein, Plaintiffs respectfully submit that the Motion should be denied in all respects, and the matter should be decided on the merits. However, it is well settled that when "a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (citing *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)). "Leave to amend a complaint must be 'freely given when justice so requires.'" *SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*, 296 F.R.D. 241, 254 (S.D.N.Y. 2013) (quoting FRCP 15(a)). Here, to the extent that the Court identifies any deficiencies in Plaintiffs' Complaint, leave should be granted because it would not be "futile."

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Motion in its entirety.

27

Dated: New York, New York
      February 20, 2026

Respectfully submitted,

By: _____

    Justin R. Bonanno
    Justin.Bonanno@HaynesBoone.com
    Brian P. Matthews
    Brian.Matthews@HaynesBoone.com

    **HAYNES AND BOONE, LLP**
    30 Rockefeller Plaza, 22nd Floor
    New York, NY 10112
    Tel: (212) 659-7300
    Fax: (212) 918-8989


    Michael I. Bernstein
    Michael@blfmiami.com
    Matthew Savino
    Matthew@blfmiami.com

    **THE BERNSTEIN LAW FIRM**
    10800 Biscayne Boulevard, Suite 950
    Miami, Florida 33161
    Tel: (305) 672-9544
    Fax: (305) 672-4572

    *ATTORNEYS FOR PLAINTIFFS NEXT/INGLE*
    *HOLDINGS, LLC and NEXT NRG OPS, LLC,*
    *f/k/a NEXTNRG LLC*

28

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to Local Rule 7.1 of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York, counsel for Plaintiffs certifies that the foregoing brief contains fewer than 8,750 words (excluding covers, captions, indexes, tables of authorities, signature block, certificates, and appendices) as reported by the word processing software used to prepare the document.

_____

Justin R. Bonanno