**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NEXT/INGLE HOLDINGS, LLC, a Delaware :
limited liability company, and NEXT NRG OPS, :
LLC, f/k/a NEXTNRG, LLC, a Delaware limited :
liability company, :

 :   MEMORANDUM DECISION
        Plaintiffs, :   AND ORDER

   v. :   25 Civ. 9836 (GBD)

 :
GSPP HOLDCO III, LLC, a New York limited :
liability company, and GREEN STREET POWER :
PARTNERS, LLC, a New York limited liability :
company, :

 :
        Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GEORGE B. DANIELS, District Judge:**

Next/Ingle Holdings, LLC, and NextNRG OPS, LLC, (together, "Plaintiffs"), bring forth this action against GSPP HOLDCO III, LLC, and GREEN STREET POWER PARTNERS, LLC (together, "Defendants"). (*See* Complaint, "Compl.", ECF No. 1.) Plaintiffs allege various New York state law claims: (1) breach of the Letter of Intent ("LOI"); (2) breach of the Membership Interest Purchase Agreement ("MIPA"); (3) fraud in the inducement; (4) breach of the implied covenant of good faith and fair dealing; (5) negligent misrepresentation; (6) unjust enrichment; (7) breach of fiduciary duty; and (8) recission. (*Id.*)

Defendants move to dismiss each of the eight counts of the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. to Dismiss, "Mot.", ECF Nos. 14, 15.) Defendants also move to dismiss Defendant GSPP from the litigation. (*Id.*) Defendants' motion to dismiss is GRANTED as to Plaintiffs' eight counts, and DENIED as to dismissing Defendant GSPP. Plaintiffs are GRANTED leave to amend the Complaint.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs Next/Ingle Holdings ("NIH") and NextNRG Ops ("NextNRG") are both limited liability companies domiciled in the state of Florida.  (Compl. ¶ ¶ 1, 2.)  Defendants GSPP HOLDCO III, LLC, ("GHC III") and GREEN STREET POWER PARTNERS, LLC ("GSPP") are both limited liability companies domiciled in the state of Connecticut.  (*Id.* ¶ ¶ 3, 4.)

In 2024, Plaintiffs entered into negotiations with Defendants for Plaintiffs to purchase membership shares in a single purpose company named GSPP JEA Ingle FL, LLC (the "Project Company").  (*Id.* ¶ 6.)  The Project Company owned the development rights to a ground mounted solar energy project (the "Project") located in Ingle, Florida.  (*Id.*)  The purpose of the Project was to generate electricity that would be sold to the Jacksonville Energy Authority ("JEA"), the community-owned electric utility company that served Ingle, Florida, pursuant to a prospective Power Purchase Agreement ("PPA").  (*Id.* ¶ 7.)

On September 26, 2024, Plaintiffs and Defendants entered into a Letter of Intent ("LOI") that evidenced that the basis for the transaction was the sale of electricity generated by the Project to the JEA.  (Compl., Exhibit 2, Letter of Intent, "LOI", ECF No. 1-2.)  The LOI included the following potential terms for the PPA: (1) a PPA rate of $49 per Megawatt ("MW") of electricity; and (2) a requirement that the JEA permit a "gen-tie" line to connect the project to JEA infrastructure (together, the "PPA Terms.").  (Compl. ¶ ¶ 9, 13; LOI Appendix A: Project Assumptions.)

---

[1] All facts in this motion to dismiss are taken from Plaintiffs' Complaint, which this Court must accept as true. *See Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101, 104 n.1 (2d Cir. 2023). Further, in deciding a motion to dismiss, this Court may consider exhibits to the complaint and documents incorporated in the complaint by reference; in this case such exhibits include the contracts themselves. *Even St. Prods., Ltd. v. Shkat Arrow Hafer & Weber, LLP*, 643 F. Supp. 2d 317, 324 (S.D.N.Y. 2008) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

The LOI also included exclusivity and confidentiality provisions that precluded Plaintiffs from directly contacting the JEA about the Project for 70 days after the execution of the LOI. (*Id.* ¶ 11; LOI § § B, H.) During the 70-day period of exclusivity, the LOI noted that "the Seller, through National Solar, will keep the Buyer up to date regarding all communications with JEA to specifically include information related to any PPA discussions." (LOI § B.) The language of the LOI also stated the following:

> Except for sections B. Exclusivity and H. Confidentiality of this Agreement, this LOI i) does not constitute a binding obligation on either Party; ii) may not contain all matters upon which agreement must be reached for the transaction to be consummated; and iii) creates no rights in favor of either Party (except with respect to the Exclusivity Period).

(LOI § I.)

Finally, the LOI provided that: "Buyer and Seller will negotiate a Membership Interest Purchase Agreement ("MIPA") for acquisition of the Project Company, which if executed, will supersede and replace this LOI." (LOI § C.)

At or around December 16, 2024, one week before the closing of the MIPA, Defendants made statements to Plaintiffs to inform them that "JEA was ready to move ahead with a PPA Rate of $49 per MW for energy and that JEA was also ready to include a 'gen-tie' line in their easement(s)." (Compl. ¶ 15.)

One week later, on December 23, 2024, both parties entered into the MIPA. (*Id.* ¶ 16; Compl., Exhibit 1, Membership Interest Purchase and Sale Agreement ("MIPA"), ECF No. 1-1.) The MIPA did not include any representation relating to a gen-tie easement or the PPA Rate and noted that no agreement had been reached between the Project Company and the JEA. (*See generally* MIPA.) The MIPA also included a superseding clause that stated the following:

3

> This Agreement, including the Schedules and Exhibits hereto, and the documents executed in connection herewith constitute the entire agreement among the Parties with respect to the subject matter hereof and thereof and supersede any prior understandings, negotiations, agreements, or representations among the Parties of any nature, whether written or oral, to the extent they relate in any way to the subject matter hereof or thereof.

(MIPA § 9.8.)

In January of 2025, Plaintiffs reached out directly to the JEA after the transaction had closed, as Plaintiffs were no longer contractually precluded from doing so. (Compl. ¶ 25.) The JEA informed Plaintiffs that the JEA had told Defendants, prior to the closing of the MIPA, that the JEA would not enter into a PPA for the Project based on the prospective terms in the LOI, and "explicitly advised [Defendants] that a PPA Rate of $49/MW was not a term JEA would agree to." (*Id.* ¶ 26.) In a meeting in the first week of March 2025, representatives of the JEA reiterated to Plaintiffs that Defendants were aware that the JEA would not accept the PPA Terms established in the LOI. (*Id.* ¶ 29.)

Plaintiffs subsequently filed suit against Defendants on November 25, 2025. (*See* Compl. at 23.) Defendants filed the motion to dismiss on January 23, 2026. (Mot. at 25.) Plaintiffs opposed the motion on February 20, 2026. (Opp. to Mot. to Dis., "Opp.", ECF No. 22.) Defendants filed a reply on March 9, 2026. (Reply to Opp. to Mot. to Dis., "Reply," ECF No. 24.) This Court heard oral argument on April 9, 2026. (ECF Entry 04/09/2026.)

## II.   APPLICABLE LAW

A defendant may seek to dismiss a case for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sullivan v. UBS AG*, 149 F.4th 206, 217 (2d

4

Cir. 2025) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although this Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" and "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678.

In addition, under Fed. R. Civ. P. 9(b), plaintiffs alleging fraud "are subject to a heightened pleading standard," *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013), and "must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b).

### III.    **DEFENDANTS' MOTION TO DISMISS IS GRANTED**

Defendants move to dismiss the Complaint pursuant to Rule 12(b)(6), arguing that Plaintiffs fail to plausibly allege a cause of action against Defendants. Defendants' motion to dismiss is GRANTED as to the eight counts in the Complaint.[2]

### A. **Plaintiffs Fail to Plausibly Allege that Defendants Breached the LOI (Count I)**

"To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015). "[A] plaintiff must at the very least identify a contractual provision that the defendant breached." *La Pecora Bianca Holdings, LLC v. Empowered Hosp. LLC*, No. 9 Civ. 09655 (ALC), 2021 WL 1164267, at *2 (S.D.N.Y. Mar. 25, 2021).

---

[2] Defendants argue in the alternative that Plaintiffs' claims against Defendant GSPP should be dismissed because GSPP is not a party to the MIPA, which is "solely between GHC III and NIH." (Mot. at 24.) Because the LOI and MIPA both reference the designees or affiliates of Defendant GSPP, (LOI at 1; MIPA at 8), Defendants' motion to dismiss as to Defendant GSPP at this stage of the case is DENIED.

Plaintiffs allege that Defendants breached the "exclusivity" section of the LOI by failing to keep Plaintiffs up to date regarding their communications with JEA. (Compl. ¶¶ 38–41; Opp. at 12.) Plaintiffs are foreclosed from making this argument because the LOI was superseded in its entirety when the parties entered into the MIPA.

"It is a well settled principle of contract law that a new agreement between the same parties on the same subject matter super[s]edes the old agreement." *Ottawa Off. Integration Inc. v. FTF Bus. Sys., Inc.*, 132 F. Supp. 2d 215, 219 (S.D.N.Y. 2001). Here, both the LOI and MIPA largely cover the same material – the details regarding the "Project" in Ingle, Florida that would generate electricity for the JEA. (Compl. ¶¶ 6–8.) Moreover, both agreements include language that indicates that the parties intended for the MIPA to supersede the LOI. The LOI states that "Buyer and Seller will negotiate a [MIPA]...which if executed, will supersede and replace this LOI." (LOI § C.) And the superseding clause of the MIPA provides that "[t]his agreement . . . . constitute[s] the entire agreement among the parties" and is intended to "supersede any prior understandings, negotiations, agreements, or representations among the Parties . . . to the extent they relate in any way to the subject matter hereof or thereof." (MIPA § 9.8.)

"A written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties." *Brad H. v. City of New York*, 17 N.Y.3d 180, 185 (2011). Applying those principles here, the clear and unambiguous superseding clause of the fully executed MIPA renders the LOI superseded and unenforceable. *See Edgewood Partners Insurance Center Inc v. PPD Development, L.P.*, No. 22 Civ. 6957 (VF), 2026 WL 801880 at *8 (S.D.N.Y. Mar. 23, 2026) ("[W]here a merger clause contains language indicating that 'all prior understandings' are superseded, courts have concluded that such language suffices to demonstrate an intent to replace

6

and supersede any prior agreement or understanding between the parties."); *Thales Alenia Space France v. Thermo Funding Co., LLC*, No. 13 Civ. 712 (SAS), 2014 WL 3887711, at *4 (S.D.N.Y. Aug. 7, 2014) (holding that an agreement which stated that it "supersedes all prior understandings, commitments and representations between the Parties with respect to the subject matter hereof" superseded a prior agreement).

Plaintiffs attempt to circumvent the superseding clause of the MIPA by arguing that Defendants breached the LOI *prior* to the execution of the MIPA. (Opp. at 12.) But claims for breach of contract that are brought under the terms of a superseded agreement covering the same subject matter are generally without merit, even if the alleged breach took place prior to the supersession. *See Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, No. 16 Civ. 2767 (GBD), 2019 WL 1649983 at *7–8 (S.D.N.Y. Mar. 28, 2019) (holding that "the Court need not consider the merits" of claims brought for breach of an agreement which occurred prior to its supersession by a later agreement because the later agreement covered the same subject matter); *see also id.* at *8 ("Regardless of when the alleged breach took place, the parties elected to supersede the NDA and establish the Funds' rights in a carefully negotiated, fully integrated SPA. *That* is the governing agreement, and Patriot cannot resurrect an earlier NDA to defeat it.").

Based on the intent of the parties for the MIPA to supersede the LOI, as evidenced in the unambiguous language of both agreements, Plaintiffs' claim for breach of contract of the LOI is DISMISSED.

## B. Plaintiffs Fail to Plausibly Allege that Defendants Breached the MIPA (Count II)

Plaintiffs allege that Defendants breached the indemnification clause of the MIPA by failing to indemnify Plaintiffs from any and all "Losses" resulting from any breach of any "Transaction Document," or "any fraud, intentional misrepresentation or willful misconduct by

7

[Defendants] in connection with the Transaction Documents." (Compl. ¶ 45.) In other words, Plaintiffs argue that the LOI was intended to be incorporated into the MIPA, and alternatively that the LOI fits into the definition of a "Transaction Document" within the MIPA.

As a preliminary matter, this Court rejects Plaintiffs' argument that the LOI was meant to be incorporated into the MIPA. The general principles that guide a court's determination of whether extrinsic material is incorporated into a contract are as follows: (1) the contract must make clear reference to the document; and (2) the contract must describe the document in such terms that its identity may be ascertained beyond doubt. *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997). These requirements ensure "that the parties to the agreement had knowledge of and assented to the incorporated terms." *Krasnyi Oktyabr, Inc. v. Maersk A/S*, 775 F. Supp. 3d 813, 818 (S.D.N.Y. 2025), *appeal withdrawn*, No. 25-1008, 2025 WL 2747829 (2d Cir. July 25, 2025) (citing 11 Williston on Contracts § 30:25 (4th ed. 2024)). Here, the plain text of both contracts shows that LOI was not intended to be incorporated by the parties into the MIPA, despite the parties being aware of the LOI's existence. In fact, the contracts show the opposite – the LOI was intended to be superseded by the MIPA.

The LOI also does not fit within the MIPA's definition of a "Transaction Document." The MIPA defines the Transaction Documents as: "[the MIPA], the Assignment and Assumption Agreement, the assignment and assumption of the Development Services Agreement, and all other agreements, certificates and other documents between Buyer and Seller or their Affiliates entered into pursuant to the terms hereof in order to carry out the Transactions." (MIPA § 1.1 at 8.) The term "Transactions" is defined as "the transactions contemplated in this Agreement and the other Transaction Documents, including but not limited to the purchase and sale of the Membership Interests." (*Id.*)

8

Plaintiffs do not offer facts to allege that the LOI was entered into *pursuant to* the terms of the MIPA, or that the LOI helped carry out the Transactions enumerated in the MIPA. In fact, the MIPA only references the LOI once – to acknowledge that the $50,000 deposit that Plaintiffs paid in connection with the LOI would be offset against the purchase price paid under the MIPA. (MIPA § 2.2.) This single mention is insufficient to constitute an agreement "between Buyer and Seller or their Affiliates entered into pursuant to the terms hereof in order to carry out the Transactions." (*Id.* § 1.1.) Moreover, even if this Court were to assume that the LOI is considered a "Transaction Document" for the purposes of this motion, Plaintiffs fail to plausibly allege that Defendants breached the LOI. Any argument that Defendants breached the MIPA via the LOI is therefore without merit.

Plaintiffs alternatively allege that Defendants breached the Material Adverse Effect ("MAE") Provision clause of the MIPA by failing to notify Plaintiffs of certain alleged communications between Defendants and the JEA. (Compl. ¶ 46.) The MIPA defines a Material Adverse Effect as follows:

> any change, occurrence, fact, event or development, that has a material adverse effect on (a) the business, the Membership Interests, the assets, Liabilities, results of operation or condition (financial or otherwise) of the Seller, the Project Company, or the Project, (b) the ability of the Seller to consummate the Transactions or perform its obligations under this agreement or any other Transaction Document to which Seller is or at Closing shall be a party or (c) the Site Host's ability to perform its obligations under any Real Property Documents or other Project Contracts to which the Site Host is party; or (d) the ability of the Project Company to develop an operable and revenue producing Project.

(MIPA § 1.1)

Plaintiffs argue that Defendants' misrepresentation and omission about the JEA's unwillingness to accept the PPA Terms constitutes a MAE under these terms. (Compl. ¶ 49.) And

9

because Plaintiffs were precluded from communicating with the JEA prior to the execution of the MIPA, Plaintiffs contend that they suffered losses as a result. (Opp. at 18.) MAE provisions are "a common feature of many contracts and are subject to the same rules of interpretation as any other contract provision." *Newmont Mining Corp. v. AngloGold Ashanti Ltd.*, 612 F. Supp. 3d 223, 245 (S.D.N.Y. 2020). This Court must interpret the provision "so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Id.*

The MAE Provision of the MIPA does not suggest that the parties intended for any deviation from the PPA Terms to constitute a material adverse effect. Although Plaintiffs argue that they suffered losses based on the JEA's unwillingness to accept the PPA Terms, Plaintiffs do not explain why a departure from the specific PPA Terms would constitute a material adverse effect. Indeed, Plaintiffs offer no information as to how any departure from a PPA rate of $49 per Megawatt ("MW") of electricity and a "gen-tie" line would hinder, among other things, "the ability of the Project Company to develop an operable and revenue producing Project." (MIPA § 1.1.) Moreover, the MIPA made thirty-three distinct representations and warranties. (*See generally id.*) None of these warranties included a reference to the $49/MW pricing or a "gen-tie" easement. Plaintiffs could have negotiated for these PPA Terms to be explicitly guaranteed under the MIPA but chose not to do so. This Court therefore declines to read in a warranty to a contract that the parties did not explicitly agree to.

The MIPA also included various disclaimers throughout the document. In reference to the PPA Rate, the MIPA noted that the $49/MW PPA Rate "is not guaranteed by Seller and must be negotiated by Buyer." (*Id.*) The same holds true for any promise of a "gen-tie easement." The only reference to a gen-tie easement in the MIPA is an estimate that the gen-tie costs would be $9 million. (*Id.*) Despite that, the same page includes a general disclaimer which states that

10

> Seller hereby disclaims . . . all warranties, express or implied, in connection with the Project assumptions provided herein. Seller makes no representations or warranties regarding the accuracy or completeness of the information provided herein and will not assume liability or responsibility for any errors, mistakes, or inaccuracies contained herein.

(*Id.*)

All of these disclaimers, especially taken together, are sufficient to override any general argument that Defendants' failure to inform Plaintiffs about the JEA's unwillingness to accept the PPA terms constitutes a Material Adverse Effect under the MIPA. Plaintiffs' breach of contract claim for the MIPA is therefore DISMISSED in its entirety.

## C. Plaintiffs Fail to Plausibly Allege Fraud in the Inducement (Count III)

Under New York law, to sustain a claim for fraudulent inducement, a plaintiff must successfully allege "(1) a knowingly false representation of a material fact and (2) detrimental reliance thereon." *Robinson v. Deutsche Bank Tr. Co. Americas*, 572 F. Supp. 2d 319, 322 (S.D.N.Y. 2008). The false representation can be either a misrepresentation or the material omission of a fact. *Id.* Plaintiffs need only plead facts that, taken as true, suggest that their reliance was reasonable. *Glob. Beauty Grp., LLC v. Visual Beauty, LLC*, No. 16 Civ. 9214 (KPF), 2018 WL 840102, at *8 (S.D.N.Y. Feb. 12, 2018).

Generally, a merger clause does not serve "as a catch-all disclaimer of reliance on any conceivable pre-contract misrepresentations about facts pertaining to the subject matter of the contract that could form the basis of a claim for fraud in the inducement." *FIH, LLC v. Found. Cap. Partners LLC*, 920 F.3d 134, 143 (2d Cir. 2019). However, when a plaintiff "has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded," the disclaimer "destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral

11

representations." *Psenicska v. Twentieth Century Fox Film Corp.*, 409 F. App'x 368, 371 (2d Cir. 2009). This rule applies so long as "(1) the disclaimer is made sufficiently specific to the particular type of fact misrepresented or undisclosed; and (2) the alleged misrepresentations or omissions did not concern facts peculiarly within the seller's knowledge." *Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.,* 115 A.D.3d 128, 980 (2014).

Here, Plaintiffs allege that Defendants committed fraud in the inducement by making material misrepresentations to the Plaintiffs about the PPA terms. (Compl. ¶ 15.) But after Defendants made their alleged material misrepresentations to Plaintiffs about the PPA Terms, Plaintiffs signed the MIPA, which included an integration clause that stated the MIPA "supersede[d] any prior understandings, negotiations, agreements, or representations among the Parties of any nature, whether written or oral, to the extent they relate in any way to the subject matter hereof or thereto." (MIPA § 9.8 (emphasis added).) The Plaintiffs have not alleged that the PPA Terms were guaranteed, or that they were central to the execution of the MIPA.

Similarly, the "as is" clause of the MIPA explained that Defendants made no promises as to the PPA Terms established in the LOI.

> **As-Is Purchase.** BUYER ACKNOWLEDGES AND AGREES THAT IT IS ACQUIRING THE MEMBERSHIP INTERESTS OF THE PROJECT COMPANY AS IS, AND THAT THE ONLY WARRANTIES OR REPRESENTATIONS MADE BY THE SELLER REGARDING THE MEMBERSHIP INTERESTS, PROJECT COMPANY, PROJECT, PROJECT SITE, OR ANYTHING RELATED THERETO ARE AS PROVIDED FOR IN THIS AGREEMENT. **SELLER DISCLAIMS ANY OTHER REPRESENTATIONS OR WARRANTIES, EXCEPT AS MADE BY SELLER IN ARTICLE 3 AND HEREBY DISCLAIMS ALL LIABILITY FOR ANY REPRESENTATION, WARRANTY, FORECAST, OR INFORMATION FURNISHED (ORALLY OR IN WRITING) TO BUYER OR ANY OF ITS AFFILIATES OR REPRESENTATIVES.** BUYER ACKNOWLEDGES THAT IT IS ACCEPTING THE MEMBERSHIP INTERESTS IN THEIR AS

12

IS CONDITION, AND ASSUMES THE RISK ASSOCIATED WITH SUCH INTERESTS.

(*Id.* § 9.16 (emphasis added) (capitalization in original).).

Accordingly, by signing the MIPA, Plaintiffs have "in the plainest language announced and stipulated that [they are] not relying on any representations" made by Defendants. *Psenicska*, 409 F. App'x at 371. Without further specific allegations, Plaintiffs' argument that they reasonably relied on Defendant's prior misrepresentations is therefore without merit. This is especially true for sophisticated parties like the ones here. *See Elite Physician Servs., LLC v. Citicorp Payment Servs., Inc.*, No. 06 Civ. 2447 (BSJ), 2009 WL 10669137, at *7 (S.D.N.Y. Oct. 9, 2009) (a sophisticated party "will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament."); *see also Great Lakes Reinsurance (UK) SE v. Herzig*, No. 16 Civ. 9848 (PGG), 2023 WL 4266012, at *5 (S.D.N.Y. June 29, 2023) ("Evidence that [a party] is sophisticated and that [a party] was represented by counsel is relevant to the issue of reasonable reliance, but it is not dispositive of it.").

Plaintiffs argue that these "general" disclaimers are insufficiently specific to the particular facts of the PPA Terms. (Opp. at 9.) But New York courts have consistently found "as is" clauses or other similar disclaimers as sufficiently specific to bar fraudulent inducement claims. *See, e.g., Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 323, (1959) ("If the language here used is not sufficient to estop a party from claiming that he entered the contract because of fraudulent representations, then no language can accomplish that purpose."); *J. Carey Smith 2019 Irrevocable Tr. v. 11 W. 12 Realty LLC*, 240 A.D.3d 432, 434 (2025) (noting that "a specific disclaimer of reliance on a party's representations bars a fraudulent misrepresentation claim against that party."); *116 Waverly Place LLC v. Spruce 116 Waverly LLC*, 179 A.D.3d 511, 512 (2020) (finding fraud claims properly dismissed as they were precluded by the contract's "as is" provision).

13

This Court is similarly unconvinced by Plaintiffs' alternative argument that Defendants' misrepresentations were solely in their knowledge because Plaintiffs were prohibited from contacting the JEA. (Mot. at 8.) Although Plaintiffs were prohibited from communicating with the JEA directly as per § B of the LOI, Plaintiffs agreed to that provision and did not negotiate for alternatives. That decision should not be relitigated here. *See DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 322 (S.D.N.Y. 2002) ("Sophisticated parties to major transactions cannot avoid their disclaimers by complaining that they received less than all information, for they could have negotiated for fuller information or more complete warranties."); *see also Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 735 (2d Cir. 1984) ("[W]here the parties to an agreement have expressly allocated risks, the judiciary shall not intrude into their contractual relationship.").

Accordingly, because Plaintiffs fail to plausibly allege that Defendants fraudulently induced Plaintiffs into signing the MIPA, Plaintiffs' fraudulent inducement claim is DISMISSED.[3]

### D. Plaintiffs Fail to Plausibly Allege Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IV)

Plaintiffs argue that Defendants breached the implied covenant of good faith and fair dealing by failing to advise Plaintiffs that the JEA was not agreeable to the terms of the PPA. (Compl. ¶¶ 62–71.) New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir.

---

[3] Defendants alternatively argue that Plaintiffs' fraud in the inducement claim is duplicative of Plaintiffs' breach of contract claims. Under New York law, however, "acts that give rise to a breach of contract claim may also support a distinct claim for fraud if the defendant misrepresents a presently existing fact [or] . . . the party made a false statement of intention that 'relates to an agreement between the parties.'" *Indep. Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184, 1197–98 (S.D.N.Y. 1996). Here, because Plaintiffs allege that Defendants fraudulently induced Plaintiffs based on statements regarding the JEA and PPA Terms outside of the MIPA (Compl. ¶ 51–61), the claims are not duplicative.

14

2002). However, "when there is a *bona fide* dispute over whether a contract covers the contested issue," *LCM XXII Ltd. V. Serta Simmons Bedding, LLC*, No. 21 Civ. 3987 (KPF), 2022 WL 953109, at *15 (S.D.N.Y. Mar. 29, 2022), or "where the existence or meaning of a contract is in doubt," *Hard Rock Café Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 567 (S.D.N.Y. 2011) (quotation marks and citation omitted), a plaintiff may assert a claim for breach of the implied covenant of good faith and fair dealing in the alternative.

Here, Plaintiffs breach of contract claims for the LOI and MIPA, along with Plaintiffs claim for breach of the implied covenant of good faith and fair dealing, deal with the allegation that Defendants failed to disclose to Plaintiffs that the JEA was not amenable to the PPA terms. (*Compare* Compl. ¶ ¶ 36–42 (Breach of Contract – LOI,) *and* Compl. ¶ ¶ 43–50 (Breach of Contract – MIPA) *with* Compl. ¶ ¶ 62–71 (Breach of the Implied Covenant of Good Faith and Fair Dealing).) These allegations do not constitute a *bona fide* dispute over the scope, meaning, or existence of the contracts at issue. *LCM XXII Ltd*, No. 21 Civ. 3987 (KPF), 2022 WL 953109, at *15; *Hard Rock Café Int'l*, 808 F. Supp. 2d at 567. Accordingly, Plaintiffs' claim that defendants violated an implied covenant of good faith and fair dealing is dismissed.

### E. Plaintiffs Fail to Plausibly Allege Negligent Representation (Count V)

Plaintiffs allege that Defendants' failure to inform Plaintiffs about the JEA's unwillingness to agree to the PPA Terms constitutes negligent representation. (Compl. ¶ ¶ 73–76.) "A claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007). As established above, Plaintiffs' signing of the MIPA prohibits any reasonable reliance on the alleged misstatements made by

15

Defendants because the "as is" clause of the MIPA is sufficiently specific to constitute a valid disclaimer. *Supra III.C.*

Moreover, Plaintiffs' allegations regarding Defendants' misrepresentations do not specifically allege that Defendants were aware of contrary information at that time. *See Coraud LLC v. Kidville Franchise Co., LLC*, 109 F. Supp. 3d 615, 620 (S.D.N.Y. 2015) ("Because this disclaimer covers 'the very matter'–potential volume, sales, income, and profits–'as to which [Coraud] now claims it was defrauded,' the disclaimer is 'sufficiently specific' to bar Coraud's claim of reliance."). Accordingly, Plaintiffs' negligent representation claim is DISMISSED.

## F. Plaintiffs Fail to Plausibly Allege Unjust Enrichment (Count VI)

Plaintiffs allege that Defendants were unjustly enriched by the PPA in the amount of $4,100,000.00. (Compl. ¶¶ 81–84.) "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Amable v. New Sch.*, 551 F. Supp. 3d 299, 317–18 (S.D.N.Y. 2021).

Recovery on a theory of unjust enrichment is unavailable "[w]here the parties executed a valid and enforceable written contract governing a particular subject matter." *Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628, 638 (S.D.N.Y. 2016). Plaintiffs' signing of the MIPA, a valid and enforceable written contract that covers the dispute at issue about the PPA Terms, precludes their unjust enrichment claim. Plaintiffs' unjust enrichment claim is therefore DISMISSED.

## G. Plaintiffs Fail to Plausibly Allege Breach of Fiduciary Duty (Count VII)

Plaintiffs allege that Defendants owed Plaintiffs "fiduciary duties of care and to disclose to the Plaintiffs based upon the confidential fiduciary relationship created between them through the LOI." (Compl. ¶ 86.) Under New York Law, "[t]o state a cause of action to recover damages for

16

breach of fiduciary duty, a plaintiff must allege: '(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.'" *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020).

As a preliminary matter, Plaintiffs' fiduciary duty claim and Plaintiffs' breach of contract claims are duplicative because both claims "arise out of identical circumstances" and are "are based upon identical allegations" that Defendants failed to inform Plaintiffs about JEA's unacceptance of the PPA Terms. *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, No. 20 Civ. 5649 (LAK), 2023 WL 5152288, at *11 (S.D.N.Y. Aug. 10, 2023). This alone is sufficient to warrant dismissal. *See Brooks v. Key Tr. Co. Nat. Ass'n*, 26 A.D.3d 628, 630(2006) (holding that a plaintiff's claim "based upon the same facts and theories as his breach of contract claim" is properly dismissed as duplicative.)

Even if the claims were not duplicative, however, Defendants did not owe Plaintiffs a fiduciary duty merely from doing business together. "A fiduciary relationship exists under New York law when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 318–19 (S.D.N.Y. 2010). "[B]eing a party to a contract does not itself impose a fiduciary duty. Rather, this duty must arise from 'a position of trust or special confidence . . . that impose[s] obligations beyond the express agreements' between the parties." *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, No. 03 Civ. 1537 (MBM), 2003 WL 23018888, at *15 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. App'x 191 (2d Cir. 2004). Plaintiffs fail to allege that Defendants owed Plaintiffs an additional fiduciary obligation beyond the terms of the contracts. Plaintiffs' fiduciary duty claim is DISMISSED.

17

**H. Plaintiffs Fail to Plausibly Allege a Claim for Rescission (Count VIII)**

Plaintiffs allege that Defendants' failure to keep Plaintiffs up to date with communications with the JEA entitles Plaintiffs to rescission. (Compl. ¶ ¶ 91–99.) As a preliminary matter, recission is a remedy, not an independent cause of action. *See Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*, No. 03 Civ. 0015 (RWS), 2006 WL 1997628, at *12 (S.D.N.Y. July 18, 2006) ("Re[s]cission is an equitable remedy posed in the interest of justice where there is no action at law.").

Second, "[t]here is no hard and fast rule on the subject of rescission, for the right usually depends on the circumstances of the particular case." *Creative Waste Mgmt., Inc. v. Capitol Env't Servs., Inc.*, 429 F. Supp. 2d 582, 606 (S.D.N.Y.), *supplemented*, 458 F. Supp. 2d 178 (S.D.N.Y. 2006). "Rescission is permitted where there is fraud or duress in the inducement of the contract, failure of consideration, inability to perform, or a breach of the contract so substantial that it defeats the object of the parties in making the contract." *Id.*

Here, Plaintiffs fail to plausibly allege any claim that could give rise to an independent claim for recission. Accordingly, Plaintiffs' recission claim is DISMISSED.

## IV.    LEAVE TO AMEND

Plaintiffs ask this Court for leave to amend to the extent this Court identifies any deficiencies in the Complaint. (Opp. at 27.) "[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003). District courts nevertheless have "the discretion to deny leave if there [is] good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 159 (2d Cir. 2015).

18

Plaintiffs request for leave to amend is GRANTED. There has been no prior amendment to the Complaint, and this Court finds that the pleading defects discussed above could be subject to cure.

## V.    CONCLUSION

This Court has considered the rest of Plaintiffs' arguments and concludes that they are without merit. Defendants' motion to dismiss the eight counts in the Complaint, (ECF No. 14), is GRANTED. Defendants' motion to dismiss the claims as to Defendant GSPP is DENIED. Plaintiffs are granted leave to file an amended pleading consistent with this opinion and order, and shall have until June 22, 2026 to do so. Should Plaintiffs timely file an amended pleading, Defendants shall have until July 22, 2026 to answer or respond to the amended pleading.

The Clerk of Court is directed to close the open motion at ECF No. 14.


Dated: May 19, 2026
       New York, New York


                              SO ORDERED.

                              _George B. Daniels_
                              GEORGE B. DANIELS
                              United States District Judge

19